UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CORNELL WINFREI MCCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00371-JPH-DLP |
| | ) | |
| T. J. WATSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

Cornell McClure, an inmate at FCI Terre Haute, is proceeding on First Amendment claims

for damages and injunctive relief. He alleges that Warden T.J. Watson, Asst. Warden Underwood,

and Mailroom Supervisor Morin failed to intervene when mailroom staff denied him access to

certain publications. The defendants have filed a motion to dismiss. They argue the complaint fails

to state a First Amendment claim and that, even if it did, prisoners may not bring First Amendment

damages claims against federal employees. For the reasons explained below, the motion to dismiss

is **DENIED** as to Mr. McClure's injunctive relief claims and **GRANTED** as to his damages claims.

## I.
## LEGAL STANDARD

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the

sufficiency of a complaint, the Court must accept all well-pleaded facts as true and draw all

permissible inferences in the plaintiff's favor.  *See Tucker v. City of Chicago*, 907 F.3d 487, 491

(7th Cir. 2018).

## II.
## BACKGROUND

The complaint alleges that mailroom staff at FCI Terre Haute repeatedly rejected books that Mr. McClure purchased with his own money. The mailroom staff allegedly used "the wrong policy to reject the book [Mr. McClure] ordered" and violated "the rights and procedures" that this policy provides. Mr. McClure brought the issue to the attention of the Warden, Assistant Warden, and Mailroom Supervisor, but they declined to exercise their authority to intervene on his behalf. *See generally* dkt. 1 (the complaint).

The Court issued an order screening the complaint that allowed Mr. McClure to proceed on: (1) First Amendment injunctive relief claims against the Warden, Assistant Warden, and Mailroom Supervisor in their official capacities; and (2) First Amendment damages claims against these defendants in their individual capacities. Dkt. 11, p. 2.

The defendants have filed a motion to dismiss. They argue the complaint fails to state a First Amendment claim because it merely alleges the violation of prison policy. Dkt. 25, pp. 3-4. They also argue that prisoners may not proceed on First Amendment damages claims following the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). *Id.* at 4-12.

In response, Mr. McClure argues that the repeated restraints on his ability to receive books violates BOP policy *and* the First Amendment. Dkt. 32, pp. 2-4. He acknowledges that his First Amendment claims involve a new *Bivens* context but argues that he does not have an alternative remedial structure to protect his First Amendment rights. *Id.* at 6-9. He also argues that dismissing his *Bivens* claims would be inconsistent with a pre-*Abbasi* decision from the Supreme Court. *Id.* at 9 (citing *Correction Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001)).

2

**III.**

**DISCUSSION**

**A.  Mr. McClure May Proceed on First Amendment Injunctive Relief Claims**

The Court construes *pro se* complaints liberally. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017); *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996). Applying this principle to Mr. McClure's complaint, the Court finds that it alleges First Amendment violations against the defendants. Prison officials allegedly confiscated Mr. McClure's books in violation of the prison's own policy and "the rights and procedures" this policy is meant to protect. Dkt. 1, p. 4.   While a violation of prison policy is not a *per se* constitutional violation, *see Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017), the Court construes the complaint as alleging that this policy protects the prisoners' First Amendment right to receive publications, and that by violating this policy, the defendants also violated the First Amendment.

The allegations in the complaint are sufficient to let Mr. McClure's injunctive relief claims proceed, and the motion to dismiss the complaint for failure to state a claim is **DENIED**.

**B.  Mr. McClure may not proceed on his First Amendment damages claims**

Mr. McClure's claim for damages must be dismissed under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

**1.  Existing precedent**

**i.**  *Bivens* **to** *Abbasi***: constitutional damages against federal officials**

By statute, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But jurisdiction does not necessarily create the authority to award damages. *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Congress has authorized district courts to award damages against officials who violate the Constitution while acting under color of *state* law, *see* 42 U.S.C. § 1983, but has not provided an

analogous authority to award damages against officials who violate the Constitution under color of *federal* law. *See Abbasi*, 137 S. Ct. at 1854.

The Supreme Court held in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* that federal agents may be personally liable for damages arising from an unreasonable search and seizure in violation of the Fourth Amendment. 403 U.S. 388, 397 (1971). In *Davis v. Passman*, the Court recognized personal financial liability for gender discrimination in federal employment in violation of the Fifth Amendment. 442 U.S. 228, 249 (1979). And in *Carlson v. Green*, the Court recognized personal financial liability for prison officials' deliberate indifference to a prisoner's serious medical need in violation of the Eighth Amendment. 446 U.S. 14, 24 (1980).

Since *Carlson*, the Court has declined to create any new contexts for "*Bivens*" claims. *See Bush v. Lucas*, 462 U.S. 367, 390 (1983) (retaliatory termination of federal employee for engaging in speech protected by the First Amendment); *Chappell v. Wallace*, 462 U.S. 296, 297 (race discrimination in the military); *United States v. Stanley*, 483 U.S. 669, 684 (1987) (nonconsensual medical experiment in the military); *Schweiker*, 487 U.S. at 414 (revocation of social security benefits without due process); *F.D.I.C. v. Meyer*, 540 U.S. 471, 485 (1993) (actions against federal agencies); *Malesko*, 534 U.S. at 74 (actions against private prison operators); *Wilkie v. Robbins*, 551 U.S. 537, 547-48 (2007) (due process claims against officials from Bureau of Land Management); *Minneci v. Pollard*, 565 U.S. 118, 125 (2012) (actions against a private prison operator's employees). In each of these cases, the Court reasoned there were "special factors counselling hesitation" about creating a new *Bivens* context and that alternative remedies were available to address the category of injury alleged by the plaintiffs. *Id.*

In *Abbasi*, the Court noted that its method for determining whether a statute creates a private cause of action has shifted dramatically since the mid-20th century. 137 S. Ct. at 1855.

When *Bivens* was decided, the Court assumed it could create private causes of action to give meaningful effect to a statute. *Id.* Against this background, the conclusion that constitutional provisions similarly imply private causes of action seemed inevitable. *Id.* Today, the Court takes a more cautious approach, assuming that the "far better course" is to restrict private causes of action to statutes where Congress has explicitly conferred such a right. *Id.* This evolution in judicial philosophy suggests "that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.*

Nevertheless, the Court declined to overrule *Bivens*, reasoning that its vindication of constitutional rights in certain contexts, "and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it." *Id.* at 1856-57. Instead, the Court limited personal financial liability against federal officials to the contexts that arose in *Bivens*, *Davis*, and *Carlson*—unlawful search and seizure, gender discrimination in employment, and deliberate indifference to a prisoner's serious medical need in a BOP facility. *Id.* Expanding these claims to a new context is now a "disfavored judicial activity." *Id.* at 1857. When asked to extend *Bivens* to a new context, courts must consider whether there are any special factors that counsel hesitation about granting the extension and whether there are alternative remedial structures available to the plaintiff to vindicate his constitutional rights. *Hernandez v. Mesa,* 140 S. Ct. 735, 743 (2020) (citing *Id.* at 1859). While the Court has not created a definitive list of "special factors counselling hesitation," separation-of-powers principles are at the center of this inquiry, and courts must consider whether the judiciary is well-suited to weigh the costs and benefits of allowing a damages action to go forward. *Abbasi* 137 S. Ct. at 1859.

ii.    **The availability of First Amendment *Bivens* claims is unsettled in the Seventh Circuit**

The Seventh Circuit Court of Appeals has not decided whether *Abbasi* precludes First Amendment *Bivens* claims against prison officials. The court has issued several unpublished orders that  affirmed the dismissal of the prisoner's *Bivens* claims on other grounds or remanded for additional briefing in the district court.

In *Borowski v. Bechelli*, the court affirmed the dismissal of a prisoner's First Amendment *Bivens* claim because his only argument on appeal was that the court should overturn *Abbasi*. 772 F. App'x 338, 339 (7th Cir. 2019). The court reasoned that it had no authority to overrule Supreme Court precedent but did not decide whether *Abbasi* allows First Amendment *Bivens* claims against prison officials. *Id.*

 In *Smadi v. True*, the court reversed the dismissal of a prisoner's First Amendment *Bivens* claims, holding that the "best approach is for the district court to recruit counsel for [the plaintiff] and receive adversarial briefing." 783 F. App'x 633, 634 (7th Cir. 2019). The court reached the same outcome in *Haas v. Noordeloos*, reasoning that "in this circuit, at least, the question [of First Amendment *Bivens* claims] is unsettled." 792 F. App'x 405, 406 (7th Cir. 2019).

In *White v. True*, the court affirmed the dismissal of a prisoner's First Amendment *Bivens* claim. 833 F. App'x 15, 18 (7th Cir. 2020). Although the court noted that "First Amendment claims are not generally recognized in *Bivens* suits," the court affirmed the dismissal because the complaint did not state a First Amendment violation. *Id.* at 19 ("For even if *Bivens* allowed White to bring a First Amendment claim, as we have explained, the restriction on outgoing mail to his daughter serves a legitimate penological interest.").

### iii.   Federal Circuit Courts have generally not recognized First Amendment *Bivens* claims since *Abbasi*

Every federal circuit court that has considered the issue has held that prisoners may not bring First Amendment *Bivens* claims. *E.g. Bistrian v. Levi*, 912 F.3d 79, 95-96 (3d Cir. 2018) (retaliation); *Earle v. Shreves*, 990 F.3d 774, 777-81 (4th Cir. 2021) (retaliation); *Watkins v. Three Administrative Remedy Coordinators of the Bureau of Prisons*, 998 F.3d 682 (5th Cir. 2021) (retaliation); *Callahan v. Federal Bureau of Prisons*, 965 F.3d 520, 523-26 (6th Cir. 2020) (seizure of provocative painting); *Vega v. United States*, 881 F.3d 1146, 1154-55 (9th Cir. 2018) (access to courts); *Johnson v. Burden*, 781 F. App'x 833, 835-37 (11th Cir. 2019) (retaliation); *see also Loumiet v. United States*, 948 F.3d 376, 380-86 (D.C. Cir. 2020) (retaliation involving a non-prisoner);

In *Boule v. Egbert*, the Ninth Circuit Court of Appeals recognized a First Amendment *Bivens* claim in a non-prisoner case where a United States citizen sued a border patrol agent for retaliation. 980 F.3d 1309, 1316 (9th Cir. 2020) (en banc). The court stated that the case involved a new *Bivens* context but reasoned that the plaintiff did not have alternative remedies and that there were no other special factors counseling hesitation against recognizing a *Bivens* claim in this context. *Id.* at 1316-17. The Supreme Court has granted the defendant's petition for a writ of *certiorari* but has not issued a ruling on the merits of the case. *See Egbert v. Boule*, 142 S. Ct. 457 (November 5, 2021).

### iv.   This Court has dismissed First Amendment *Bivens* claims in other contexts

This Court has ruled that federal prisoners may not bring First Amendment *Bivens* claims for retaliation in violation of the First Amendment. *E.g. Badley v. Granger*, 2:17-cv-0041-JMS-DLP, 2018 WL 3022653 (S.D. Ind. June 18, 2018); *Purkey v. Barr*, 2:19-cv-517-JMS-DLP, dkt.

84, p. 8 (S.D. Ind. July 16, 2020); *Fulks v. Watson*, 2:19-cv-0501-JPH-MJD, 2021 WL 1225922 (S.D. Ind. March 31, 2021); *Decker v. Bradley*, 2:19-cv-616-JRS-MJD 2021 WL 1531178 (S.D. Ind. April 18, 2021). Other district courts have also ruled that *Abbasi* precludes First Amendment *Bivens* claims. *See Akande v. Phillips* 2018 WL 3425009 (W.D.N.Y July 11, 2018) (collecting cases); *Clark v. True*, 2021 WL 3860461 (S.D. Ill. August 27, 2021) (dismissing First Amendment *Bivens* claims for retaliation and free expression) (collecting cases).

This Court has not yet considered whether a federal prisoner may bring a *Bivens* claim for violations of the First Amendment right to publications.

With this precedent in mind, the Court will proceed to analyze Mr. McClure's *Bivens* claims under the framework set forth in *Abbasi*.

### 2. Analysis of Mr. McClure's *Bivens* claims

### i. Mr. McClure's Claims Present a New *Bivens* Context

The first step is to decide whether Mr. McClure's claims involve a new *Bivens* context. *See Abbasi*, 137 S. Ct. at 1864. The Supreme Court has never recognized a First Amendment *Bivens* claim, let alone a prisoner's First Amendment right-to-publications claim. *Borowski*, 772 F. App'x at 339 (citing *Reichle v. Howards*, 566 U.S. 658 663 n. 4 (2012)). Mr. McClure concedes that he is bringing a *Bivens* claim in a new context, *see* dkt. 32, pp. 6-9, and the Court accordingly concludes that his First Amendment right-to-publications claim presents a new *Bivens* context.

The Court will next consider whether alternative remedies and special factors counsel hesitation against recognizing Mr. McClure's First Amendment *Bivens* claim.

>       ii.   **Alternative remedies and special factors counsel against recognizing Mr. McClure's *Bivens* claims**

Mr. McClure's request for injunctive relief is an alternative remedy that would potentially vindicate his First Amendment rights. *See Abbasi* 137 S. Ct. at 1862 (*Bivens* actions are most appropriate where the plaintiff's remedies are "damages or nothing").

Mr. McClure also has "full access to remedial mechanisms established by the [BOP], including . . . grievances filed through the [BOP's] Administrative Remedy Program." *Earle*, 990 F.3d at 780 (quoting *Malesko*, 534 U.S. at 74). These administrative remedies provide "yet another means" to vindicate his First Amendment rights. *Malesko*, 534 U.S. at 74.

Furthermore, the Prison Litigation Reform Act of 1995 does not provide for damages claims against federal employees, which suggests that "Congress chose not to extend the *Carlson* damages remedy" to other contexts involving prisoners. *Abbasi*, 137 S. Ct. at 1865.

Finally, the judiciary is reluctant to insert itself into "the problems that arise in the day-to-day operation of a corrections facility," which is more properly left to the expertise of the Executive Branch. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

To summarize, Mr. McClure's First Amendment claims involve a new *Bivens* context. He has other ways to vindicate his First Amendment rights, including injunctive relief and administrative remedies. Congress's decision not to recognize private suits for damages in this context and judicial deference to the Executive Branch also support dismissal of his damages claims. The Court declines to recognize a new *Bivens* context, and Mr. McClure's First Amendment *Bivens* claims are **DISMISSED**.

## IV.
## COUNSEL

In *Smadi*, the Seventh Circuit reversed and remanded the dismissal of the plaintiff's First Amendment *Bivens* claim with instructions to recruit counsel and receive adversarial briefing before ruling on the motion to dismiss. 783 F. App'x at 634; *see also Haas*, 792 F. App'x at 409 (reasoning that "in this circuit, at least, the question [of First Amendment *Bivens* claims] is unsettled.").

Mr. McClure has filed a motion for assistance recruiting counsel. *See* dkt. 31. In deciding whether to grant a motion for assistance recruiting counsel, district courts consider two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc).

Mr. McClure has made repeated efforts to obtain counsel without success. The Court finds that Mr. McClure made a reasonable attempt to recruit counsel on his own before seeking the Court's assistance.

To decide the second question, the Court considers "'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Olson*, 750 F.3d at 712 (quoting *Pruitt,* 503 F.3d at 655).

The Court finds that in the specific context of this case, Mr. McClure is competent to represent himself at this stage of the proceedings and that receiving additional briefing from recruited counsel would not aid the resolution of the motion to dismiss.

Since *Smadi*, there have been dozens of persuasive opinions declining to recognize First Amendment *Bivens* claims in the context of civil rights lawsuits filed by federal prisoners. *Supra*

10

Part III-B-1-iii to iv. The Court has the benefit of this persuasive authority, which was not available to the district courts in *Smadi* or *Haas*. Mr. McClure has also submitted a cogent and well-researched response brief in opposition to the motion to dismiss which has aided the Court's review. *See* 32. Accordingly, the motion for assistance recruiting counsel is **DENIED**. Dkt. [31].

**V.**

**CONCLUSION AND FURTHER PROCEEDINGS**

The defendants' motion to dismiss, dkt. [24], is **DENIED** as to Mr. McClure's official capacity claims for injunctive relief and **GRANTED** as to his individual capacity claims for damages. The defendants shall file an answer to the complaint within **14 days** of this Order.[1]

**SO ORDERED**.

Date: 3/4/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CORNELL WINFREI MCCLURE
37001-037
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov

---

[1] In support of their "Motion to Dismiss," the defendants filed a "Brief in Support of Motion to Dismiss and Motion for Summary Judgment." Dkt. 25. At one point in the brief, the defendants state, "As explained below, McClure has not fully availed himself of [BOP's administrative remedy system]" before filing this lawsuit. *Id.* at 9. But the defendants did not provide an analysis regarding Mr. McClure's exhaustion of administrative remedies, nor did they designate evidence in support an exhaustion defense. As such, the Court makes no ruling on the issue of whether Mr. McClure exhausted his available administrative remedies before filing this lawsuit.